Anthony v. Halderman.

---

## ANTHONY V. HALDERMAN.

1. ELECTORS—*Necessary qualifications.* An allegation in a petition that A. B. was a male person over twenty-one years of age, a citizen of the United States, and had resided in Kansas for six months next preceding an election, does not show that he is a qualified voter at such election. It must also appear that he has resided in the township or ward in which he offers to vote, at least thirty days next preceding such election.

2. —————— *No restriction on account of color.* The object and effect of the Fifteenth Amendment to the Federal Constitution were to place the colored man in the matter of suffrage on the same basis with the white. It had no other effect. The colored man to become a voter, as well as the white man, must be twenty-one years of age, six months a resident of the State, and thirty days a resident of the township or ward.

4. FINAL JUDGMENT, *unappealed from, conclusive between parties.* When a tribunal having jurisdiction of the subject-matter and the parties, has once decided a question, it is *res adjudicata* between those parties, and cannot be relitigated by them in an original proceeding before another tribunal. The party complaining of such decision or judgment should correct it by proceedings in error or appeal; and failing to do so he is estopped from further inquiry. [All the Justices concurring.]

4. —————— [But whether the record in this case shows an *adjudication*, or that the city council constituted a *court* having power to adjudicate, *quere?* BREWER, J., affirming; VALENTINE, J., and KINGMAN, C. J., per contra.]

*Error from Leavenworth District Court.*

PROCEEDINGS in the nature of *quo warranto.* On the 5th of April, 1870, *Daniel R. Anthony* and *John A. Halderman* were opposing candidates for the office of Mayor of the City of Leavenworth—an office to be filled by election on that day. Said city was divided into four wards, each ward constituting a separate election precinct: (§§ 8, 14, ch. 18, Gen. Stat., pp. 130, 131.) The city council constitute a board of canvassers, to canvass the returns from the several wards, and award certificates of election: (§ 52, p. 142.) Chapter 118, Laws of 1869, (amended by ch. 118, Laws of 1870,) provides for the registration, on the Tuesday next preceding any general election for city officers, of all citizens who are entitled to vote in the city of Leavenworth—the councilmen of each ward to constitute a board of registration for their respective wards. By the constitution of the State of Kansas, (Art. 5, § 1,) the right of suffrage was restricted to "white" citizens. On the 18th day of February, 1870, the Fifteenth Amendment to the Constitution of the United States, declaring that "The right of citizens "of the United States to vote shall not be denied or "abridged by the United States or by any State on ac-"count of race, color, or previous condition of servitude," had been ratified by thirty States, (being more than three-fourths of the whole number;) and on the 30th day of March, 1870, said amendment was officially promulgated as having, by such ratification, become a part of the Constitution of the United States.

At said city election, held April 5th, 1870, there were cast in said City of Leavenworth, for the office of mayor, 2859 votes, of which 1406 were cast for said *Daniel R. Anthony,* and 1453 were cast for said *John A. Halderman.*

The city council, as a board of canvassers, met and canvassed said votes, declared said *Halderman* elected to said office of mayor, and awarded to him a certificate of election to said office, and he qualified and took possession of the office. Thereupon, said *Anthony* commenced an action in the district court, as plaintiff, against *Halderman* as defendant, to contest the right of the defendant to said office. The plaintiff, in his petition, alleged that said *Halderman* had " usurped and intruded into the office of mayor," etc., and had been " unlawfully holding and exercising said office, since the 9th day of April, 1870; " and claiming to be entitled to said office himself, plaintiff alleged, (after stating the facts respecting the election held April 5th, and the return and canvass of the votes, as above set forth,) that on the 30th day of March, 1870, 130 male persons of African descent, (77 of whom resided in the second ward, and 53 in the fourth ward,) each of whom was a citizen of the United States, over twenty-one years of age, and had resided in the city of Leavenworth for more than six months next preceding, applied to the board of registration of their respective wards to be registered, and that said boards refused to register any of said persons as voters; that each of said 130 persons attended at the election in their respective wards on said 5th day of April, and there offered to vote, and tendered to the judges of election a ticket bearing the name of the plaintiff for the office of mayor of said city, and that said votes and the whole of them were refused; that said 130 votes " so rejected would " have been given for the plaintiff, and were sufficient to " change the result of said election for mayor, thus giv- " ing him a majority of all the legal votes, and a greater " number than were given for said *Halderman* for said " office." The petition also set forth circumstantially

the facts respecting plaintiff's efforts to contest the election of the defendant before the city council, and the refusal of that tribunal to hear or determine such contest. Judgment was demanded that the defendant be ousted from said office, and that the plaintiff be adjudged mayor of said city.

The defendant answered, admitted his election and qualification as mayor as alleged in the petition, and setting up five defenses to the action. The *third* defense in substance stated that by " an ordinance relating to elections," approved March 19, 1862, and which was still in force, the city council were authorized to try and determine contests of elections for city officers, and that the plaintiff had commenced proceedings to contest the election of the defendant as mayor before said city council, and that said city council had tried and determined such contest " *as set forth in the petition*," and "that such determination had not been appealed from or reversed." The *fourth* defense to said petition, in substance averred, " that there then were and had been for many years, four wards in said city, one of which was known as the First Ward thereof, and that at a special election held therein since said April election for a councilman of said city from said ward, said plaintiff was duly elected such councilman to fill a vacancy then and before then existing; and that said plaintiff had qualified as such councilman, and acted as such."

The plaintiff replied to said *third* defense, making a general denial of the matters therein alleged; and he demurred to the *fourth* defense. The action was tried upon the issues raised by said *demurrer*, which was held to reach back to the petition. The court held that the petition did not state facts sufficient to constitute a cause

of action, and gave judgment for the defendant. The plaintiff brings the case here by petition in error.

*S. D. Lecompte*, for plaintiff in error:

1. The city council, on whom is conferred the power to determine contested city elections, by the ordinances of the city, is not a court. No court can be created, otherwise than by an act of the legislature. Const., Art. 3, § 1. The council has not the elements which constitute a court.

The provision of the ordinance making its determination final, is either unconstitutional, or it only means to declare who shall enter upon the performance of the duty. It is unconstitutional, if it is to be understood in its literal signification as being conclusive against all re-examination.

But as matter of *fact* there was no trial, no adjudication, no judgment by the city council. They decided that they could not go behind the returns, and inquire into the election itself. They *refused* to sit as a court for contesting the election; and these facts appear in the petition.

2. That the writ of *quo warranto*, and the proceedings in the nature of *quo warranto*, have ever been the proper and special remedy for correcting all errors, irregularities and wrongs in the holding of office. 10 Com. Dig., p. 622; 5 Denio, 411; 14 Iredell, 48; 3 Black. Com., 262, 263; 21 Pick., 148; 33 Miss., 508; 25 Ver., 435.

Full power in *quo warranto* proceedings is conferred on the district courts. Gen. Stat., p. 759, Art. 29; civil code, § 652. The language herein used is fully ample to cover this case; § 653, first and fifth clauses, and § 655. This proceeding is the only remedy existing under the constitution and laws of this State.

3. The registration law, (ch. 118, laws of 1869, ch. 118, laws of 1870,) is unconstitutional and void. It prescribes a qualification for voters inconsistent with the State constitution; art. 5, § 1. But the 130 persons whose votes were refused, applied to be registered in conformity with the law, and the refusal of the registrars to perform their duty cannot deprive a voter of his right of suffrage.

The 15th amendment to the U. S. constitution removes the word "white" from our constitution; the persons offering to vote had not "neglected" to register; they were qualified voters.

4. Section 14 of the registration law making the action of the registrars final, is no impediment to the *plaintiff's* redress. It only intended to make their action final as regards the immediate right to vote, as between the parties and the judges of the election; only final as against a party who has neglected his duty, in abstaining from a compliance with the law. Not final as a matter of decision on any question raised or existing, whether a person or a class of persons have or not *the right to vote*. Gen. Stat., 416, § 101; 2 S. & R., 363; 1 Overt., 1; 2 Rawle, 369, 380; 8 Pick., 453; 3 Yates, 479.

The law furnishes ample redress where an officer has been installed, and claims his office by virtue of illegal votes cast, and opens the whole case to investigation. *People v. Leaman*, 5 Denio, 413; 38 Barb., 67; 7 Cal., 432; 1 Dutch., (N. J.) 354; 23 Wend., 222, 254; 4 Conn., 297; 8 Iowa, 102.

No court hesitates to oust an officer claiming his election by reason of illegal votes allowed by the registrars; and there can be in law, and in rights of litigants, no difference whether the actual result has been accomplished by the admission of votes clearly *illegal*, or the

rejection of votes clearly *legal*. If any difference, it would be in the judgment, which would be to set aside the election. *Fry v. R. R. Co.*, 8 Conn., 107; 4 Wis., 420; 19 Wend., 44; 2 Mich., (Gibbs,) 348.

5. It is conceded that the demurrer of the defendant operates back to the petition. The case is before this court, therefore, as if on demurrer to the petition, and thus, all the allegations of the petition are admitted to be true; and there are sufficient allegations in the petition not denied by the answer, to show that the plaintiff is entitled to the judgment demanded.

But if the plaintiff be not entitled to judgment of ouster, and that he be instated in the office in question, he is still entitled, under the more general prayer of relief in the petition, to have the election declared void. 23 Wendell, 222, 254.

*Clough & Wheat*, for defendant in error:

1. It was proper for the district court to carry said demurrer back to said petition, and to sustain the same thereto, if it did not state facts sufficient to constitute a cause of action. *Wile v. Sweeney*, 2 Duvall, 161; *Lockwood v. Bigelow*, 11 Minn., 113; *City of Calais v. Bradford*, 51 Me., 414; *Leslie v. Harlow*, 18 N. H., 518; *People v. Booth*, 32 N. Y., 397; *State v. Cullen*, 18 Md., 418; *State Bank v. Lockwood*, 16 Ind., 307; *Commonwealth v. Pittsburg & C. R. R. Co.*, 58 Penn. St., 26; *Speilman v. State*, 27 Md., 520; *Cook v. Graham*, 3 Cranch, 229; *Peoria R. R. Co. v. Neill*, 16 Ill., 269; 1 Chitty on Pl., 668.

2. It appears from the plaintiff's petition, that defendant received a majority of 47 of all the *votes cast* for the office of Mayor of said city. It is not necessary to consider whether the votes of said 130 persons, or their ap-

plications to *register* were properly rejected or not, because there was not, prior to the taking effect of the act of congress approved May 31, 1870, 16 U. S. Stat. at Large, 140, any law or rule allowing or permitting rejected votes to be considered in determining who was elected, no matter whether such votes were properly rejected or not: 16 Mich., 295; 13 B. Monroe, 523; 1 Wm. Blackstone, 229; 2 Burrows, 1017; and said act of congress did not affect said election, as it was not enacted until long after said election was held, and has no application to elections held under the authority of any State for State, county, or city officers. It follows that said petition does not state facts sufficient to constitute a cause of action, and that the court decided correctly without reference to other questions.

3. But to be a qualified voter in any ward of said city at an election, a person otherwise qualified must have resided in such ward thirty days next preceding the election at which he offers to vote. Const., Art. 5, § 1. And as it is not stated in said petition that any of said 130 persons so resided in such ward for such 30 days, it follows that said petition is insufficient, because such residence does not appear from *facts* therein stated; (§ 84, Civil Code.) The statement in the petition to the effect that " by reason of the premises," (referring to the six months residence *in said city*, the U. S. citizenship, and the residence on the 30th of March preceding the election in the ward in which the offer to register and vote is averred to have been made,) " each of said 130 persons was a legally qualified voter," is a conclusion of law, and not the averment of a fact. Allegations of conclusions of law are not to be considered. 44 Barb., 166; 4 Blackf., 392; 9 Bosw., 583; 33 Cal., 121.

4. It appears from said petition that said 130 persons (who did not vote) were not *registered ;* and for this reason alone they were not entitled to vote. Sec. 14, ch. 118, laws of 1869, and said ch. 118 is a valid and constitutional law; §4, Art. 5, Const. of Kansas; *Patterson v. Barlow,* 60 Penn. St., 54.

5. It was not the duty of registrars to register said persons. By the provisions of §1 of Art. 5 of the Constitution of Kansas the privilege or franchise of voting is only given to certain *white* persons. It appears from said petition that said 130 persons were not white, and also that they were colored persons of African descent, commonly known as, and called Negroes. For this reason alone we submit said petition was fatally defective. If, in answer to this suggestion, it shall be claimed that the so-called 15th amendment to the Constitution of the United States *conferred* the franchise, or a right of voting, on such negroes as had the necessary qualifications other than that of being *white,* then, in answer thereto, we submit that said amendment does not have such effect. Said amendment does not increase the number, or classes of voters in this or any other State. It does not purport to *confer any right* or franchise, but in effect merely prohibits the National and State governments from depriving any citizen, on whom the franchise of voting has been, or hereafter may be conferred, of his right to exercise such franchise, by future legislation in any form, for any of the reasons therein mentioned. There is nothing in said amendment which pretends to affect or relate to any sort of legislation had before it took effect.

To *prevent a future denial of a right,* is one thing; to *confer a right,* is another, and very different matter. Negroes never otherwise obtained any right to vote in Kan-

sas; if the Constitution of this State shall hereafter be amended so as to permit negroes to vote here, then such right could not afterwards be taken from them. In States where they had such right when said amendment took effect, it cannot be taken from them; further than this said amendment is not operative. That said amendment should be construed according to its language, and not in accordance with any supposed or presumed intent not shown by the law itself, see 8 B. & C., 99; 3 Selden, 97; 14 B. Monroe, 90; 2 Cranch, 358; 6 Ad. & Ellis, 7; 53 E. C. L. R., 185; 9 Porter, 266.

6. The plaintiff is estopped from prosecuting this action. It appears from the said petition that plaintiff gave notice of a contest for said office of mayor, and that the same was heard by the council of said city at a time fixed, and that on such hearing a decision was rendered in favor of defendant. Such decision is *final* and *conclusive*, (except on error from the decision of the council, and this is not such a proceeding.) In the matter of that contest the council acted as a court, and its decision has the same effect as the decision of any court on a matter within its jurisdiction. 1 Met., (Ky.,) 533; 24 Cal., 449, 457.

7. The charter of cities of the first class having made provision for contesting elections of city officers, (ch. 47, § 15, sub-div. 25th, laws of 1870,) said charter controls in this case, and the plaintiff cannot maintain an action under Article 29 of the Code, because the provision in said charter is in the nature of a special law for the particular class of cases therein referred to, and operates as an exception to said Article 29, the same as though contests for such city offices were in said Article 29, specially excepted from the operation thereof. Sedg. on Stat. and

Con. Law, p. 123; A. & A. on Cor., 871; 21 Penn. St., 37; 23 Eng. L. & Eq., 389; 29 Ala., 573, 583.

8. If it shall be held that the petition is sufficient, as stating facts sufficient to constitute a cause of action, then we claim that said fourth defense is sufficient to bar said action. The office of councilman of said city is incompatible with that of mayor thereof, and by being a candidate for the office of councilman, and accepting the election, and entering upon the performance of the duties thereof, said plaintiff abandoned any and all claim or right to the office of mayor, and in effect, thereby resigned the same. 2 Hill, 97; 23 Maryland, 45; 1 H. Bl., 268; 5 R. I., 1, 9, 11; 3 Burrows, 1616; A. & A. on Cor., § 434; Gen. Stat., p. 130, §§ 10, 11, 12; p. 140, §§ 40, 41, 42.

Having thus in effect abandoned all claim to the office of mayor, the plaintiff has no more right to prosecute this action than any other citizen. *Craft v. Com'rs of Jackson Co.*, 5 Kas., 518; 12 N. Y., 433; 32 N. Y., 397; 1 Iowa, 71; 5 Wheaton, 291.

The following opinion was filed by

BREWER, J.: This was an action brought under the provisions of Art. 29 of the code of civil procedure, by the plaintiff in error, plaintiff below, to recover the office of Mayor of the City of Leavenworth, and to oust defendant therefrom. The petition was filed in the court below on the 4th day of June, 1870; and on the 2d of July, an answer was filed containing five grounds of defense. To the fourth defense plaintiff demurred. On the argument of the demurrer, the defendant suggested that the petition did not contain facts sufficient to constitute a cause of action, and asked the court to carry said

demurrer back to the petition, and to sustain it thereto. This was done. The court found the petition defective, sustained the demurrer thereto, and no application being made for leave to amend, rendered judgment in favor of defendant for costs. Such judgment is now brought here for review.

The right of the court, upon suggestion, to carry the demurrer back and apply it to the first fault in the pleadings is conceded by counsel for plaintiff in error, as well as fortified by the abundant citations in the brief of counsel for defendant in error. Does the petition state facts sufficient to constitute a cause of action? It alleges that at the election held in the city of Leavenworth on April 5th, 1870, said plaintiff and defendant were the only candidates for the office of Mayor; that by the returns of the judges of said election made to the city council, it appeared that 1453 votes were cast for John A. Halderman, and 1406 for Daniel R. Anthony, and none for any other person; that afterwards a certificate of election was issued to said Halderman, who took the oath of office, and has since been acting as Mayor. It further alleges that on the 30th of March, that being the day of registration, certain persons, naming them, in all fifty-three persons, were " residents of said city, to-wit, of the " fourth ward thereof; and that each of said persons was " on said March 30th a free male person, over twenty-" one years of age, a citizen of the United States, and " had resided in said city more than six months, next " prior to said March 30th, and was a colored person of " African descent, with a preponderance of African " blood; but was, by *reason of the premises*, a legally " qualified voter in said city in the ward in which he re-" sided." There is a similar allegation in reference to seventy-seven persons, naming them, residents of the

second ward. The petition alleges further, that these persons applied to register, were refused; applied to vote, tendering ballots with plaintiff's name thereon for mayor, but were refused and their ballots rejected. It alleges that those ballots should have been received, and if received, would have given plaintiff a majority.

Do the facts thus alleged show that the persons named were qualified voters in their respective wards? If not, their registration and their ballots were both properly refused. The constitution, Art. 5, § 1, reads—

1. Qualifications of electors.

"Every white male person, of twenty-one years and upwards, belonging to either of the following classes, who shall have resided in Kansas six months next preceding any election, *and in the township or ward in which he offers to vote at least thirty days next preceding such election,* shall be deemed a qualified elector."

The object and effect of the Fifteenth Amendment to the Federal Constitution were to place the colored man in the matter of suffrage on the same basis with the white. It does not give him the right to vote independent of the restrictions and qualifications, such as age and residence, imposed by the State Constitution upon the white man. The colored man, to become a voter, as well as the white man, must be twenty-one years of age, six months a resident of the State, and thirty days a resident of the township or ward. That amendment operates no further than to strike the word "white" from the State Constitution. Now, this petition alleges that these persons were over twenty-one years of age, and had resided six months in Kansas, and six months in the city of Leavenworth, but nowhere alleges that they had resided *in the ward* in which they offered to vote thirty days prior to such election. Failing to show this, it fails to show that they were qualified

2. No restriction on account of color.

voters, or that they were improperly refused registration, or that their ballots were illegally rejected, or that the plaintiff failed to receive all the legal votes to which he was entitled. For this reason the ruling of the court below in sustaining the demurrer to the petition was correct, and should be affirmed.

Again : The petition alleges that at the first meeting after the election the city council opened the returns, and it appearing therefrom that John A. Halderman had received a majority of the votes cast, the plaintiff thereupon gave notice to the city council that he desired to 3. Former judgment, a bar to new action. contest the election ; that the council fixed a time and place for hearing such contest; that plaintiff served a notice of the grounds of such contest upon said defendant; that the council met at the time and place, and after hearing evidence offered by plaintiff, ruled that it could not inquire back of the returns of the judges, and ordered the city clerk to record the name of defendant as mayor, and issue him a certificate thereof. This amounts substantially to an allegation that plaintiff applied to the city council as a tribunal to hear and determine the contested election case between himself and defendant, and that that tribunal ruled adversely to his claim. Can he re-litigate that question elsewhere ? It is a general rule, which none will gainsay, that where any tribunal has jurisdiction of the subject-matter of and the parties to any controversy, and renders a judgment thereon, such judgment is conclusive between the parties. If the rulings of that tribunal are adverse to one party, and wrong, he should seek to correct that judgment by error or appeal. Failing to do that he is estopped from further inquiry. Nor would a failure to provide for a review of such rulings and judgment, by an appellate tribunal affect the conclusiveness of such judgment.

There are many questions which the Legislature has wisely provided shall be finally decided by the tribunal having original jurisdiction. Section 15 of ch. 18, Gen. Stat., 1868, "An act to incorporate cities of the first class," as amended March 2d, 1870, granting powers to the city council, empowers it, (Laws of 1870, page 103, clause 25,) "To provide by ordinance for the election of " city officers, and prescribe the manner of conducting " the same, and the returns thereof, and for deciding " contested elections in any manner not in conflict with " existing laws.

This section in terms empowers the city council to act as a board of canvassers, in which capacity it looks only at the returns of the judges of election; and also, when an election is contested to hear and determine such contest, and in that capacity can take testimony and inquire into any such wrongs and errors as by the general election law are grounds of contest. Tribunals for contested election cases are common to all States. We have one tribunal for contested elections of State officers; one for members of the Senate and House of Representatives; one for county and township officers; and by this section, and a similar one in the act to incorporate cities of the second class, one for city officers. But it is claimed that this delegation of power to the city council is void because the decision of a contested election case is an exercise of judicial power, and the constitution provides, (Art. 3, § 1,) that, "The judicial power of the State shall be vested in a supreme court, district court, probate court, justices of the peace, and *such other courts* inferior to the supreme court, as may be provided by law," and the city council is not in name or fact a court. We think the error in the argument lies in the last proposition. True,

this city council is nowhere in the charter, called a
" court;" but when sitting to hear and determine a con-
tested election case it is *pro tanto* a court. Like any
other tribunal created by our statutes to hear and deter-
mine contested election cases, it has power to subpœna
witnesses, administer oaths, take testimony, and pro-
nounce judgment. General Stat., pp. 422, 427. *Malone
v. Murphy*, 2 Kas., 261: *The State, ex rel., v. Sheldon*, 2
Kas., 322.

But again, it is urged that the constitution gives
original jurisdiction in *quo warranto* to the supreme court,
and that the legislature have not power to limit or restrict
that jurisdiction. It seems to us clear, however, that
giving to this court original jurisdiction in no way re-
strains the legislature from giving like original jurisdic-
tion to other tribunals. It would be different if *exclusive*
original jurisdiction was given to this court. So also a
different question would be presented if the legislature
should attempt to vest exclusive original jurisdiction in
some tribunal other than this. We see then no reason
why this power may not be delegated to the city council.
Having been so delegated, and the plaintiff having ap-
pealed to it and ᴏ tained its decision, we deem him con-
cluded thereby.

For this reason also, the judgment of the district court
should be affirmed.

VALENTINE, J.: I concur in the decision of the court
in this case, but I do not concur in all that is said, in the
written opinion of Mr. Justice BREWER. I do not think
that the petition in the court below shows, as is claimed,
that the subject-matter of this controversy had ever been
heard and determined, by any judicial tribunal of com-
petent jurisdiction, prior to the commencement of this

action. The following is all that portion of the petition which states anything with reference to this matter, and it reads as follows:

" The plaintiff further alleges, that afterwards, on the 7th day of April, 1870, the said city council of said city met, (it being the first meeting of the said city council after said election,) and proceeded to open the returns made to said city council by the judges of said election, as filed with the city clerk of said city, to ascertain the persons appearing by said returns to be elected to the various offices of said city, including said office of mayor; and it appearing by said returns that said John A. Halderman had received a majority of the votes cast at said election for the office of mayor of said city, and therefore to have been elected such mayor, the said Daniel R. Anthony thereupon at said meeting of said city council gave said council notice that he desired to contest the election of the said John A. Halderman, and did then at said meeting, state in writing to the said city council, the grounds of his said contest, and prayed said city council to fix a time and place for hearing and determining said contest; and said council thereupon did fix upon the 9th day of April, 1870, at 7½ o'clock P. M. as the time for hearing and determining said contest; and within twenty-four hours after filing with said city council his notice of said contest he served upon said John A. Halderman a notice of the grounds of his contest, with the time and place at which said city council would hear and determine the same. And plaintiff further alleges that said city council met at the time above designated, and that he attended before said city council to prosecute said contest but that *said city council refused to hear and determine said contest;* and after hearing evidence offered by the plaintiff touching the rejection by the judges of said election of the votes of the persons above named as hereinbefore stated and alleged, and the refusal of said board of registrars to register the names of said persons as hereinbefore alleged, the said city council ruled and declared that they had *no power or authority to decide upon the question of the illegality of the election for mayor as aforesaid,* or whether the persons aforesaid were legal voters in said city or not, or whether the board of registrars should

have put their names upon the list of voters of said city, or whether any legal votes had been rejected by the judges of election at said election, or upon the effects and consequences upon said election of the rejection of any legal votes by said judges of said election, *and could only decide and declare who appeared by said returns made by said judges of election to have been elected ;* and thereupon said city council ordered the city clerk of said city to record the name of John A. Halderman as the person elected mayor of said city at said election, and to give him a certificate of such election, which was accordingly done."

There is nothing in the foregoing that shows that the city council of Leavenworth is a judicial tribunal for the determination of contested election cases; and there is nothing that shows that the council itself ever claimed to possess any such powers.   On the contrary, it shows that the city council were a mere board of canvassers, simply ministerial officers, possessing no judicial power.   Substantially the council themselves so determine and declare, and there is nothing in any part of the petition showing the contrary.   They substantially decide and declare that they have no power except to count the votes returned by the judges of election, to declare who received the most of them, to declare who appears to be elected; and this is all they did.   They did not attempt to act as a judicial tribunal; they did not attempt to go behind the returns of the judges of the election ; · they did not attempt to decide as to the legality of the returns of the election; nor did they attempt to do any act that a mere board of canvassers could not legally do. .  Then how can it be said that the questions involved in this case have ever before been adjudicated?   Even if the city council could act in both capacities, if they could act both as a board of canvassers, and also act as a judicial tribunal for the trial of contested election cases, it would make no difference as far as this case is concerned, for in

this case they acted only as a board of canvassers. But the claim that the plaintiff's petition shows that the city council can ever act as a judicial tribunal has no foundation. The most that can be claimed is, that the petition is silent upon the subject. Neither do the statutes in and of themselves make the city council a judicial tribunal. Section 15, (Gen. Stat., p. 132, as amended by laws of 1870, p. 97) of the act relating to cities of the first class, which is the only statute relating to this subject, provides that "the *mayor and council* of each city, * * * shall have power * * * to provide *by ordinance* for the election of city officers, and prescribe the manner of conducting the same, and the returns thereof, and for deciding contested elections in any manner not in conflict with existing laws." It will certainly not be contended that because the mayor and council have power to provide for the election of city officers that therefore the city council alone must elect the city officers; and it should not be contended that because the mayor and council have power to provide for deciding contested elections, that therefore the city council alone constitute a judicial tribunal for the trial of contested elections. When such tribunal is created it must be done by *ordinance*. It does not appear from the petition that the mayor and council have ever exercised their power, given them by the statute, of creating such tribunal. The council cannot exercise this power alone; they cannot alone, if they would, create themselves such judicial tribunal; to do so they require the aid of the mayor. The defendant alleges in his answer that an ordinance was passed, constituting the city council such tribunal; but the plaintiff in his reply denies the same; and hence we cannot assume, against the denial of the plaintiff, that any such ordinance was ever passed, or that it ever had any existence. The ques-

tion of its existence is not a question of law. The court cannot judicially take notice of its existence. But the question of its existence is a question of fact which must be tried by a court or jury, and be proved by competent and legal evidence, (Gen. Stat. 1868, 701, § 379,) the same as any other fact. Under the pleadings in this case, it must be assumed that no such ordinance ever existed, and therefore in the absence of such ordinance, that neither the city council nor any other board or persons could legally organize a judicial tribunal for the trial of a contested election.

KINGMAN, C. J., concurs with VALENTINE, J., in the foregoing opinion.

*By the Court:* The judgment of the district court is affirmed.