⌊Echols v. The State, ex rel. Dunbar.⌋

# Echols *v.* The State, *ex rel.* Dunbar.

*Contest of Municipal Election, by Information in Nature of Quo Warranto.*

1. *When information in nature of quo warranto lies, to test right to office under municipal election.*--Where the charter of a municipal corporation provides, that the votes cast at a popular election for mayor and aldermen shall be returned by the managers of the election to the acting mayor, and be by him laid before the city council, to be examined and counted; that the said council shall be the judges of the election, and shall have full power to determine all matters in relation thereto, and to ascertain the legality of voters, and shall reject all illegal votes, and count only such as are legal, and, to this end, are empowered to take testimony, examine witnesses, send for persons and papers, &c.; and that when they shall have decided, from the returns of any such election, who the legally elected mayor and aldermen are, they shall make known their decision by publication in a newspaper; but does not declare that their decision shall be final, and makes no provision for contesting it,—their decision gives to the person in whose favor it is rendered a *prima facie* right to the office, until he is ousted by proper legal process; but it may be contested, by a party aggrieved thereby, by a proceeding in the nature of a *quo warranto* under the general law.

[Echols v. The State, ex rel. Dunbar.]

2. *Same; evidence.*—On the trial of such a proceeding, the count, examination, &c., by the city council, are competent evidence for the defendant, who is in possession of the office under their decision, and may be proved by the original record kept by them, or by a certified copy; but the tally-sheets kept by the managers of the election, not being required by law to be kept, are not competent evidence for the relator.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. L. B. STRANGE.

The petition by which this proceeding was commenced was in the name of the State, on the relation of Francis M. Dunbar; was verified by the oath of the relator; was addressed to the judge of the Circuit Court, and dated the 18th January, 1872. It alleged that, at an election for mayor and aldermen of the city of Opelika, held pursuant to the provisions of the charter, on the 2d day of January, 1872, the relator received a majority of the legal votes cast for the office of mayor, and was duly and legally elected mayor of said city; that, notwithstanding these facts, Milton F. Echols had seized and usurped the said office, and was exercising the rights pertaining to it, receiving the emoluments, &c. The petition prayed that said Echols might be required to show by what authority he was thus usurping said office, and compelled to surrender it, and that the relator might be admitted and inducted into it by proper forms of law. The defendant appeared, and demurred to the petition, or relation, assigning thirteen causes of demurrer, all of which were overruled by the court; and he then filed five special pleas, to which demurrers were interposed, and some of them sustained. The pleadings are voluminous, and cannot well be condensed. There was a trial by jury, and a verdict for the relator, under the charge of the court. Numerous charges were asked and refused, to which exceptions were reserved. The assignments of error, thirty-six in number, embrace the charges given and refused, the rulings of the court on the pleadings and evidence, and on various preliminary motions, which require no special notice. The opinion of the court states the material facts, so far as necessary to a correct understanding of the points decided. No briefs are on file, and none have come to the hands of the reporter.

GUNN & HOLIFIELD, with WATTS & TROY, for appellant.

W. H. BARNES, and G. D. & G. W. HOOPER, *contra.*

STONE, J.—Many of the questions attempted to be raised by this record, are such as can not be reviewed in this court. Motions for imparlance, continuance, and judgments on de-

[Echols v. The State, ex rel. Dunbar.]

murrer not shown in the judgment entry, are of this class· Many other questions, preliminary to the main points presented, will not probably arise again.

Section 3 of the act "to establish a new charter for the city of Opelika," approved March 3d, 1870—Pamph. Acts, 323—contains the following clauses: "The government of said city shall be styled 'The City Council of Opelika,' and shall consist of a chief officer, to be styled 'Mayor of the City of Opelika,' and six aldermen, to be elected as hereinafter provided for." The section then declares the qualifications of electors, and further enacts, "That the said city council shall determine and designate the place in said city to be the election precinct for each successive election, and appoint managers of the election, such number of persons as may be deemed expedient, but in no instance fewer than two; and said city council shall have power to prescribe the manner in which all elections shall be conducted; · *Provided, always,* that the votes shall be returned to the existing mayor, and by him laid before the city council, to be examined and counted; that the said city council shall be the judges of all elections, and shall have full power to determine all matters in relation thereto, and ascertain the legality of voters, and in the count shall reject all illegal votes, and count only such as are legal; and to this end, they are empowered to take testimony, examine witnesses, to send for persons and papers, &c.; that when the said city council shall have decided, from the returns of any such election, who the legally elected mayor and· aldermen are, the said city council shall make known such decision by publication in a newspaper or newspapers published in said city."

The record informs us, that, on the second day after the election, the mayor laid before the council the ballots and poll-lists of the election, which thereupon entered on the duty of purging said ballots and counting the votes; that said city council continued their labors, from day to day, until the 10th, when they announced the result, and on the next day made publication thereof, in · a newspaper published in the city. The result, as announced, was, that F. M. Dunbar had received for mayor one hundred and fifty votes, and M. F. Echols had received for the same office one hundred and fifty-five votes; and they thereupon proclaimed that Echols was the elected mayor. The said city council kept a record of their said sessions from day to day, and the result they attained on the 10th; which was entered in the minutes of the council. The tally-lists of all the votes cast at the election showed that Dunbar received a majority over Echols of thirty-three votes; while the finding and decision

of the city council proclaimed Echols elected by five majority.

The Circuit Court permitted the relator to give in evidence before the jury the poll-lists and tally-sheets of the votes cast, and refused to allow the defendant to make proof of the deliberations and judgment of the city council, by which they declared Echols elected. The court charged the jury, that, "if they believed all the evidence, they must find for the plaintiff." These several rulings were duly excepted to, and they are now assigned as error.

Mr. Cooley says (Const. Lim. 623), that "it matters not how high and important the office, an election to it is only made by the candidate receiving the requisite plurality of the legal votes cast." He says further, that "as the election officers perform for the most part ministerial functions only, their returns, and the certificates of election which are issued upon them, are not conclusive in favor of the officers who would thereby appear to be chosen, but the final decision must rest with the courts. This is the general rule; and the exceptions are of those cases where the law under which the canvass is made declares the decision conclusive, or when a special statutory board is established with powers of final decision." He adds further, "If any one, without having received the requisite plurality of votes, intrudes into an office, whether with or without a certificate of election, the courts have jurisdiction to oust, as well as to punish him for such intrusion."

Judge Dillon, in his work on Municipal Corporations, vol. 2, § 141, says: "It is not unusual for charters [of municipal corporations] to contain provisions to the effect, that the common council, or governing body of the municipality, shall be the judge ' of the qualifications,' or ' of the qualification and election of its own members,' and of those of the other officers of the corporation. What effect do provisions of this kind have upon the jurisdiction of the superior courts? The answer must depend upon the language in which these provisions are couched, viewed in the light of the general laws of the State on the subject of contested elections and quo warranto. The principle is, that the jurisdiction of the courts remains, unless it appears with unequivocal certainty that the legislature intended to take it away. Language like that quoted above will not, ordinarily, have this effect, but will be construed to afford a cumulative, or primary tribunal only, not an exclusive one."

The same author, in section 139, had said, "A constitutional provision that the judicial power of the State shall be vested in a supreme and inferior courts, does not disable the

legislature from providing that the city council shall be the judge of the election of its mayor, members and other officers, and from prohibiting the ordinary courts of justice from inquiring into the validity of the determination of the city council."

In the case of the *State of Missouri, ex rel. v. Fitzgerald*, 44 Mo. 425, the question was, whether the board of councilmen of the city of St. Joseph were the sole and final judges of the qualification and election of its members. The language of the charter was, "The board of councilmen shall judge of the qualifications, elections, and returns of the members thereof." The board had passed on the election and qualification of the respondent, and had admitted him to a seat in their body. The action of the council, in thus admitting him, was sought to be reviewed in a proceeding by *quo warranto*. The court ruled, that "the authority of the board of councilmen to pass, in the first instance, upon the questions involved respecting the election and qualification of the respondent, could not be disputed." The court further ruled, however, that the decision of the board of councilmen, though *prima facie* conferring the right to sit in the body, was not conclusive, and did not take away the jurisdiction of the common-law courts to retry the question, there being no words in the charter conferring on the board of councilmen exclusive or final jurisdiction.

In *Gass v. The State, ex rel.*, 34 Ind. 425, it is said, that when there is no provision of law for contesting, the proper mode of attacking the election of a city officer is by an information in the nature of a *quo warranto*. To the same effect is *State of Iowa, ex rel. v. Funck*, 17 Iowa, 365. In the case of the *State v. The Clerk of the County of Passaic*, 1 Dutcher's Rep. 354, a similar decision is announced as that in 44 Mo., *supra*. See, also, *Hadley v. Mayor*, 33 N. Y. 606; *People, ex rel. v. Kilduff*, 1 Ill. 492; *Anthony v. Haldumon*, 7 Kan. 50; *Ex parte Heath*, 3 Hill, N. Y. 42.

Where, however, the statute creates a board or tribunal for the trial of contested elections, and clothes such tribunal with necessary machinery and power to hear proofs and determine controversies between parties litigant, in the absence of statutory regulations giving or providing for further remedy, the decision pronounced in such contest is conclusive alike of law and fact, unless successfully assailed for want of jurisdiction.—*Bateman v. Megowan*, 1 Metc. (Ky.) 533; *The State, ex rel. v. Marlow*, 15 Ohio State, 114. The case of *Wammack v. Holloway*, 2 Ala. 31, is somewhat at war with the view last above expressed; but that case was so shaken, in its fundamental principle, by the decision of this

court in *Beebe v. Robinson*, 52 Ala. 66, that it can not now be said to stand as an authority on the question.

While, under the act "to establish a new charter for the city of Opelika," the city council are authorized to examine and count the votes; are made judges of the election, with full power to determine all matters in relation thereto, to ascertain the legality of voters, to reject illegal votes, to take testimony, examine witnesses, send for persons and papers, and to decide who are the legally elected mayor and aldermen of the city; yet there is nothing in the statute which gives to this proceeding the form, solemnity, or sanction of a contested election; no provision for instituting any such investigation by any dissatisfied elector, and nothing said about notice, or issue to be formed. This, as we understand the statute, is the primary count and reckoning of the ballots. None other is provided for by law. Until its result is announced, it can not be known who will, and who will not be proclaimed elected; and, hence, it can not be known who will be aggrieved by the proclaimed result. Till then, no contest can be instituted, for there is no ascertained result to contest. The count, decision, and publication, provided for in the charter, stand in the place and stead of the certificate of election given to the board of supervisors of elections, as provided for in the act "to regulate elections in this State," approved October 8th, 1868.—See sections 36 *et seq.* Acts of 1868, page 276. They confer a *prima facie* right to the office; nothing less, and nothing more.

In the said election law of 1868, section 37, it is enacted, "that it shall be the duty of the board of supervisors of elections, upon good and sufficient evidence that fraud has been perpetrated, or unlawful or wrongful means resorted to prevent electors from freely and fearlessly casting their ballots, to reject such illegal or fraudulent votes cast at any such polling place," &c. Section 38 provides, that the said board of supervisors shall make certificates of the exact number of votes cast for each candidate for each office voted for. Section 42 makes it the duty of the secretary of State to issue certificates of election, based on these certificates, so made by the board of supervisors: and section 43 makes it the duty of the governor to issue commissions in accordance with such certificates of election. In all this, the board of supervisors, as its name imports, exercises a large supervising power; it may hear evidence, and may reject from the count illegal or fraudulent votes; but no provision is made for giving notice, or forming an issue. In fact, no issue could be formed: for, at that stage of the proceeding, no election is proclaimed, and hence none can be contested. In

[Echols v. The State, ex rel. Dunbar.]

most respects, the proceedings before the council in the city election, and before the board of supervisors under the general election law, are strikingly alike. Yet, after all this has been done, persons thus certified as elected officers under the general election law, are only *prima facie* entitled to the office. Their right is not, thereby, conclusively established. In the same statute, commencing with section 45, provision is made for contesting and retrying the right to the office.

Under the statute " to establish a new charter for the city of Opelika," no provision is made for contesting elections. Hence, a party aggrieved by the action of the city council, in proclaiming the result of an election, is without remedy, unless he is entitled to prosecute a proceeding in the nature of *quo warranto*. Under the authorities above cited, we hold he is entitled to such writ.

Under the rules above declared, the defendant below should have been allowed to prove the examination, count, and result of the election, as proclaimed by the city council. That was the primary and legal count, and established, *prima facie*, his right to the office. This *prima facie* right, thus ascertained, authorized Mr. Echols to exercise the functions of the office, until legally ousted therefrom. The record, or minutes of the council, proven to be such, or a duly certified transcript, either of them, was competent evidence. The Circuit Court erred in its rejection. The tally-sheets, made probably by the managers, were authorized by no law, and were not proper evidence.

The Circuit Court erred also in several of the charges given and refused, not necessary to be here specified. What we have said above will be sufficient guide for another trial.

On another trial, the examination and count of the votes by the city council, and its determination of the result, will make a *prima facie* case. If it be shown that they allowed illegal votes, or disallowed legal votes polled, and the result is thereby changed, that will be an answer to the *prima facie* case, and will show that Dunbar ought to have the office. In all popular elections, the candidate who receives the greatest number of legal votes, legally cast, is entitled to the office.

Reversed and remanded.