M. E. MATTHEWS v. THE BOARD OF COMMISSIONERS OF SHAWNEE COUNTY.

JUDGE OF SUPERIOR COURT, *Not an Elective Officer.* No election having been provided for by either the statutes or the constitution for the office of judge of the superior court of Shawnee county, no valid election was or could have been held on November 3, 1885.

*Application for a Writ of Mandamus.*

ACTION brought in this court November 17, 1885, by *M. E. Matthews* against *The Board of Commissioners of Shawnee County*, and the county clerk thereof, to obtain a peremptory writ of mandamus to compel the defendant board to canvass certain votes. The opinion, filed February 5, 1886, contains a sufficient statement of the case.

*M. E. Matthews*, plaintiff, for himself.

*Charles Curtis*, county attorney, and *L. J. & L. S. Webb*, for defendants.

The opinion of the court was delivered by

VALENTINE, J.: On March 7, 1885, the legislature of the state of Kansas passed an act creating the superior court of

Shawnee county, (Laws of 1885, ch. 140,) which act took effect on March 13, 1885, and on March 24, 1885, the governor appointed Hon. W. C. Webb as judge of such court. On the next day Webb duly qualified and took possession of the office, and is still holding the office and exercising all its powers and functions. On November 3, 1885, which was the day of the general election for that year, a number of votes were cast in Shawnee county for the plaintiff, M. E. Matthews, for that office. The county commissioners refused to canvass the returns of these votes, and the plaintiff commenced this action against them to obtain a peremptory writ of mandamus from this court to compel them to canvass such returns. Upon the facts of this case as presented by the pleadings, the only question presented is, whether a valid election was held, or not, on November 3, 1885, for the office of judge of the superior court of Shawnee county.

The constitution provides, among other things, as follows:

ARTICLE 2, SECTION 19: " . . . It [the legislature] shall have the power to provide for the election or appointment of all officers, and the filling of all vacancies not otherwise provided for in this constitution."

ARTICLE 3, SECTION 1: "The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law; and all courts of record shall have a seal, to be used in the authentication of all process."

"SECTION 11. All the judicial officers provided for by this article shall be elected at the first election under this constitution, and shall reside in their respective townships, counties or districts during their respective terms of office. In case of vacancy in any judicial office, it shall be filled, by appointment of the governor, until the next regular election that shall occur more than thirty days after such vacancy shall have happened."

ARTICLE 15, SECTION 1: "All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law.

"SECTION 2. The tenure of any office not herein provided

for may be declared by law; when not so declared, such office shall be held during the pleasure of the authority making the appointment; but the legislature shall not create any office the tenure of which shall be longer than four years."

The aforesaid statute of March 7, 1885, provides, among other things, as follows:

"SECTION 9. The governor shall appoint and commission a judge for the court hereby created, whose term of office shall commence on the date of his commission, and who shall hold his office until the first Monday of April, 1887. . . ."

"SECTION 21: Unless otherwise provided by law, said superior court shall cease to exist on the first Monday of April, 1887, on which date all actions, proceedings, orders, decrees and judgments then pending in said court, and all records, pleadings, processes and other matters belonging or pertaining thereto, shall be transferred to the district court of Shawnee county. . . ."

Whether *any election* for the office of judge of the superior court of Shawnee county was *in fact* held on November 3, 1885, may at least be questioned. There were over 6,300 votes returned as cast for other officers at that election, and yet only 254 votes were returned as having been cast for the office of judge of the superior court of said county; and all these were returned as having been cast for the plaintiff. The plaintiff, however, alleges in his application for the writ of mandamus that "he received at said election more than 700 votes for said office," and that he received all the votes that were cast for that office. It also appears that although there were four political parties at that time in Shawnee county — the republican, the democratic, the prohibition and the workingmen's party — and that all nominated candidates for the various offices to be filled at that election, except the office of judge of the superior court, yet that no party nominated a candidate for that office. Neither was there any notice given by any officer that an election would be held at that time for judge of the superior court of Shawnee county. Indeed, there was no election *in fact* held for that office, unless the law imperatively demanded that there should be such an election

held at that time. But assuming for the purposes of this case that there was such an election held *in fact*, then was there any such election held *in law?* This question must be answered in the negative. Both parties assume that the act creating the superior court of Shawnee county is a valid law and that the court itself is a valid court, and therefore we shall also assume that the act is a valid act and that the court is a valid court, without discussing, considering or deciding the question of the validity or invalidity of the act or the court at all. We then have the naked question: Was the election valid? There is no provision in any statute or in the constitution authorizing the holding of any such election. The court itself was created merely for temporary purposes; and it will cease to exist and the office itself will expire on the first Monday of April, 1887; hence there could be no very great necessity for any such election. (See §§ 9 and 21 of the aforesaid act.) Under the constitution, the legislature has the power to create new courts, inferior to the supreme court, but what their jurisdiction or the tenure of office of the judges shall be, or how the judges shall be selected or chosen, is not prescribed by the constitution. The legislature selected the judge of the criminal court of Leavenworth county by simply enacting that the judge of the probate court should be the judge of the criminal court. (Comp. Laws of 1862, ch. 35, § 2.) And a court for the trial of contested county elections is created as follows:

"Sec. 87. A court for the trial of contested county elections shall be thus constituted: The probate judge shall be the presiding officer, and shall select two disinterested persons who shall be associated with him." (Comp. Laws of 1879, ch. 36, § 87.)

In the case of *Anthony v. Halderman*, 7 Kas. 50, 68, this court seems almost to have recognized the power of the legislature to give authority to the mayor and council of a city to create a city contest court. Also, the board of county commissioners is sometimes recognized as at least a *quasi* judicial tribunal. Indeed, courts may be created by statute in a great

39 — 34 KAS.

*Note (margin):* Judge of superior court, not an elective officer.

variety of ways, and courts so created are not courts *provided for* by the constitution, but are simply "such other courts, inferior to the supreme court, *as may be provided by law.*" (Const., art. 3, § 1.) Only such courts as are specifically mentioned in the constitution are courts provided for by the constitution. We would call attention to § 11, article 3, and § 11 of the schedule of the constitution, which read as follows:

"SEC. 11. All the judicial officers *provided for* by the article shall be elected at the *first election under this constitution.*"

"SEC. 11. If a majority of all the votes cast at such election [the one held on the first Tuesday of October, 1859, for the ratification or rejection of the constitution] shall be in favor of the constitution, then there shall be an election held in the several voting precincts *on the first Tuesday in December, A. D. 1859,* for the election of members of the first legislature, of all state, district and county officers *provided for in this constitution, and for* a representative in congress."

The first election held under the constitution was held on the first Tuesday of December, 1859, twenty-six years ago, and of course a judge of the superior court of Shawnee county could not have been elected at that time, as no such court or office was then in existence or even contemplated. Hence the superior court of Shawnee county is not one of the courts *provided for* by the constitution. The plaintiff, however, claims that the latter portion of § 11, article 3, of the constitution, which provides that "in case of vacancy in any judicial office, it shall be filled by appointment of the governor until the next regular election that shall occur more than thirty days after such vacancy shall have happened," applies to all judicial officers, whether they are "provided for" by the constitution or are only such "as may be provided by law." But even if this provision of the constitution were applicable, (and whether it is or not we do not now wish to express any opinion,) it would not follow that the election held on November 3, 1885, for judge of the superior court of Shawnee county, was valid. It will be admitted that the office of judge of such court is a judicial office, and that an office not filled is an

office vacant, and that when the governor appointed the present incumbent to fill the office he appointed him to fill a vacancy ; but how will that help the plaintiff's case? The incumbent will, under the section of the constitution quoted, fill the vacancy "until the next regular election." Now, under the constitution and statutes, there never will be a "regular election" for that office. The words "regular election" do not necessarily mean general election, or township election, or any state, county, city, or district election. They simple mean the "regular election" prescribed by law for the election of the particular officer to be elected. Judicial officers are not all elected or appointed at the same time nor in the same manner. Some, as judges of the supreme and district courts, are elected at general elections; others, as justices of the peace, are elected at township elections; others, as police judges, are elected at city elections; and others still, as judges *pro tem.* and judges of courts for the trial of contested elections, are elected, appointed or chosen at still other times and in different modes; and where the legislature creates a new court it might of course provide that the election for the judge or judges thereof *should be held on any day in the year* which the legislature might choose to name. In the case of *The State, ex rel., v. Cobb,* 2 Kas. 32, 54, 55, it is held that "the exact literal signification of the phrase 'next regular election' is, the next election held conformable to established rule or law," and "that the next regular election is the one next occurring at which the particular class of judicial officers is to be chosen." These definitions we think are correct. Under the constitution, justices of the peace and judges of the supreme court were not to be elected at the same time, although they are all judicial officers. The next regular election to be held for any particular office could of course be only such an election as could be regularly and legally held for that office; and as to the particular office, it could not be an election held for some other office, or at a time not fixed by law for filling such office or without law, or merely because an election might properly be held at that time for the accomplishment of some other pur-

pose.   If the time for holding the election for such particular office should be fixed by law for the first Monday of June of each year, then the next "regular election" for such office would be an election held on the first Monday of the next June; and it could not be an election held at some other time not fixed or provided for by law.   But so far as the office of judge of the superior court of Shawnee county is concerned, ʼno time for an election is fixed or provided for by law; and therefore no such election can be or could have been held on November 3, 1885, or at any other time.

As before stated, the office was intended to be only temporary.   It was not deemed necessary by the legislature that any election should ever be held to fill that office; and hence the legislature did not prescribe any time for the holding of any such election; and neither does the constitution fix any time for the holding of any such election, for, as before stated, the office of judge of the superior court of Shawnee county is not one of the offices provided for by the constitution, but is simply an office provided for by statute, and provided for under the authority, general and specific, given by the constitution to the legislature.   It may be that the legislature, after creating the court, should have provided that an election should be held at some early day to choose a judge for such court; but it did not do so.   Hence we suppose that the present incumbent will hold the office until both the court and his term of office expire, which will be on the first Monday of April, 1887.   Although we may assume that the legislature should have provided for an election to select a judge for the court, still if we further assume that the act creating the court and the court itself are nevertheless valid, then the incumbent may hold his office until the end of the term fixed by the legislature.   Section 12 of article 3 of the constitution provides as follows:

"SEC. 12.  All judicial officers shall hold their offices until their successors shall have qualified."

The legislature, however, cannot create an office the tenure of which shall be longer than four years. (Const., art. 15, § 2.)

Our conclusion is, that whether the act creating the superior court of Shawnee county is valid or invalid, no valid election was or could have been held on November 3, 1885, for the election of a judge of that court; hence the writ of mandamus prayed for in this action must be refused.

All the Justices concurring.